UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHAWN LEE GODWIN,

                    Plaintiff,

        v.

STUART ANDREWS, M.D., *et al.*,

                    Defendants.

Case No. C18-431-RSM-JPD

REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action brought under 42 U.S.C. § 1983.  Plaintiff Shawn Godwin, a former inmate at the Snohomish County Jail, filed suit against Snohomish County ("the County"), as well as Snohomish County Jail employees Debbie Bellinger, RN, Stuart Andrews, M.D., and Alta Langdon, ARNP.  Dkt. 6.[1]  Plaintiff's civil rights claims arise out of his former incarceration at the Snohomish County Jail.  Plaintiff entered the jail with an existing shoulder

---

[1] In the Court's April 9, 2018 Order Directing Service on Individual Defendants, the Court declined to serve ARNP Langdon because "plaintiff has not described any specific acts of ARNP Langdon that harmed plaintiff's federal constitutional rights."  Dkt. 7 at 2.  Plaintiff was granted leave to file an amended complaint describing how ARNP Langdon caused plaintiff harm of constitutional dimension within thirty days if he still wanted ARNP Langdon to be served as a defendant.  However, ARNP Langdon answered plaintiff's complaint on June 8, 2018, admitting that she is a named party to this lawsuit.  Dkt. 18.

REPORT AND RECOMMENDATION
PAGE - 1

injury and claims he was denied access to weekly physical therapy, increased doses of pain medication, and a second mattress, thereby violating his federal constitutional rights and causing permanent damage to his shoulder.  By Order dated August 20, 2018, the Court granted the County's motion to dismiss it as a defendant from this action.  Dkt. 25.  This matter comes before the Court on the remaining defendants' motion for summary judgment, Dkt. 21, to which plaintiff has failed to respond.  Accordingly, the Court, having reviewed the defendants' motion, plaintiff's lack of opposition, defendants' reply, and the balance of the record, concludes that the motion should be granted, and that this action should be dismissed with prejudice.

## II.    BACKGROUND

A.    Factual History

Plaintiff was booked into the Snohomish County Jail on October 3, 2017.  Dkt. 22 (Portz Decl.), Ex. B.  At intake, he advised medical staff that he had an injury to his right shoulder that occurred 3-4 days prior to his arrest.  *Id.*, Ex. C (chart notes).  Medical staff requested records from Swedish Medical Center where plaintiff was previously treated for the injury.  *Id.*  Swedish Medical Center prescribed medication for plaintiff's injury, however, he was unable to fill the prescription due to his subsequent incarceration.  *Id.*  Plaintiff was seen by medical staff on October 5, 2017 for shoulder pain.  *Id.*  Plaintiff was given Ibuprofen and tasked to be seen in clinic.  *Id.*  He was later given Tylenol, Tramadol, and Naproxen for pain control.  *Id.*

On October 11, 2017, he was taken to the Everett Clinic Orthopedics to evaluate his shoulder.  *Id.*, Ex. G.  Physician Assistant Tyler Wipf reviewed x-rays of plaintiff's affected shoulder and observed a large impacted fracture of the greater tuberosity.  *Id.*  PA Wipf

1  recommended plaintiff continue with conservative care, ice, rest, NSAIDS, and to avoid

2  movements that cause discomfort.  *Id.*  He also ordered an MRI and a follow up for surgical

3  consultation.  *Id.*  He noted plaintiff's current outpatient prescriptions included 1-2 50 MG

4  tablets of Tramadol to be taken every 6 hours as needed for pain.  *Id.*  No prescriptions were

5  requested or ordered during the appointment.  *Id.*

6       Plaintiff underwent an MRI and had a follow up evaluation with PA Wipf on

7  November 3, 2017.  *Id.*  PA Wipf noted plaintiff had a largely impacted fracture of the greater

8  tuberosity affecting the footprint of rotator cuff repair.  *Id.*  He again noted plaintiff's

9  unchanged outpatient Tramadol prescription.  *Id.*  Plaintiff's chart notes from this appointment

10  do not indicate any prescriptions were requested or ordered.  *Id.*  On November 4, 2017,

11  plaintiff submitted a medical kite stating he would like to receive 100 MG of Tramadol 3 times

12  a day as recommended by his outside provider on November 3, 2017.  *Id.*, Ex. E.  Medical staff

13  responded that his chart would be reviewed.  *Id.*

14       On December 7, 2017, plaintiff saw Kristen Harvey, PA-C, at UWMC Bone and Joint

15  Center (UWMC) for his shoulder injury.  *Id.*, Ex. H (UWMC medical records).  PA-C Harvey

16  documented "[a]t this point there is unlikely to be restoration of normal function through

17  conservative measure given the severity of his injury" but that plaintiff was a poor candidate

18  for surgery given his young age and the likelihood that he would need a subsequent surgery in

19  the future as well as his current incarceration.  *Id.*  She provided a physical therapy referral to

20  begin gentle passive range of motion for his shoulder and light deltoid strengthening once his

21  range of motion improved.  *Id.*  Although she provided a physical therapy referral, she noted

22  plaintiff should anticipate limitations and only stretch his shoulder to tolerance.  *Id.*  She also

REPORT AND RECOMMENDATION
PAGE - 3

1    recommended continued use of Naproxen and Tramadol prescribed by the jail's medical staff.

2    *Id.*

3        On December 27, 2017, plaintiff submitted a medical kite stating his shoulder's range

4    of motion was "barely existent" and that he wanted weekly physical therapy as recommended

5    at his UWMC appointment.  *Id.*, Ex. E.  On December 29, 2017, plaintiff's chart was reviewed

6    and ARNP Karin Heusted instructed plaintiff be informed that the recommendation from

7    UWMC was not for him to go to physical therapy weekly, but rather to do "home exercises 5

8    sets daily of 5 reps each of stretching until you can passively get arm to at least shoulder

9    height."  *Id.*, Ex. K (task notes).  ARNP Heusted saw plaintiff on January 3, 2018.  *Id.*, Ex. D.

10   She reviewed his medical notes and saw the referral for physical therapy.  She created a plan to

11   arrange for a physical therapy appointment so plaintiff could be given stretches to do while

12   incarcerated.  *Id.*  She also discussed this plan with Dr. Andrews.  *Id.*

13       On January 10, 2018, plaintiff attended an initial evaluation at Everett Physical Therapy

14   and Sports based on PA-C Harvey's referral.  *Id.*, Ex. I.  On January 17, 2018, ARNP Heusted

15   saw plaintiff in response to a medical kite he submitted on January 11, 2018 regarding his

16   shoulder.  *Id.*, Ex. D.  Plaintiff reported he was given 5 exercises to do a couple days a week

17   but noted he was unable to do some of the exercises that required a ball and resistant band.  *Id.*

18   He also reported sleeping was uncomfortable even with an extra mattress and requested a

19   blanket for support.  *Id.*  An extra blanket was ordered for plaintiff.  *Id.*  ARNP Heusted noted

20   that the physical therapist faxed the jail asking to see plaintiff a couple more times.  *Id.*  A plan

21   was made to have plaintiff follow up with physical therapy the following month.  *Id.*

22       On January 22, 2018, plaintiff was sent to segregation after testing positive for opiates.

23   *Id.*, Ex. J.  On January 31, 2018, plaintiff submitted a medical kite requesting a second mattress

REPORT AND RECOMMENDATION
PAGE - 4

because his extra mattress was scratched from his card when he entered segregation.  *Id.*, Ex.

E.  Medical staff responded that his request would be given to Nurse Bellinger.  *Id.*  On

February 2, 2018, plaintiff submitted a grievance form asking, among other things, to be seen

by a physical therapist, for a second mattress to elevate his body while he slept, and an increase

in his pain medication.  *Id.*, Ex. F.  Plaintiff was informed that Dr. Andrews had already seen

him and advised him that he needed to increase the range of motion in his shoulder before the

physical therapist wanted to see him for treatment.  *Id.*

It appears plaintiff had another physical therapy appointment on February 7, 2018.  *Id.*,

Ex. I.  On February 12, 2018, Dr. Andrews saw plaintiff again.  *Id.*, Ex. D.  Dr. Andrews

created a plan to send plaintiff back to physical therapy for deltoid strengthening advice once

he was able to improve achieve a range of motion in his shoulder to shoulder level.  *Id.*  He

also recommended continued use of Tramadol and Naproxen.  *Id.*  A second mattress for

plaintiff was authorized that same day.  *Id.*, C.

On February 17, 2018, plaintiff submitted a second grievance form requesting to be

seen by a physical therapist 1-3 times per week for 12 weeks and for an increase in his pain

medication.  *Id.*, Ex. F.  He was told Dr. Andrews provided him range of motion exercises to

perform three times daily based on UWMC's medical notes and plaintiff's physical therapy

record.  *Id.*  He was further advised that once he was able to increase the range of motion in his

shoulder, Dr. Andrews would review his request for physical therapy for deltoid strengthening.

*Id.*  On February 26, 2018, Dr. Andrews saw plaintiff again and observed improved movement

in his shoulder.  *Id.*, Ex. D.  Dr. Andrews made a plan to schedule a physical therapy visit for

advice on what could be done in jail for plaintiff until he reached a range of motion of 90

degrees. *Id.* Medical staff scheduled a physical therapy appointment for March 2, 2018. *Id.*, Ex. C.

On March 2, 2018, it appears plaintiff attended his physical therapy appointment. *Id.* A few days later on March 4, 2018, plaintiff submitted a medical kite stating he needed his pain medication increased because his current medications were not working. *Id.*, Ex. E. He was informed he was at the maximum dose but could switch his Naproxen prescription to Ibuprofen if he wanted. *Id.* On March 7, 2018, Nurse Bellinger noted the jail received a call from plaintiff's physical therapist requesting to see plaintiff 1-2 times per week for 4 weeks. *Id.*, Ex. K. On March 9, 2018, medical staff scheduled physical therapy appointments for March 16, 2018, March 21, 2018, March 30, 2018, and April 6, 2018. *Id.*, Ex. C.

On March 14, 2018, plaintiff had another appointment with PA-C Harvey at UWMC. *Id.*, Ex. H. She noted surgery was not an option for plaintiff until he was released and "his best chance [was] trying to lightly use the arm and maintain as functional use as possible." *Id.* Under the assessment and plan "Therapy/motion" section, she wrote "light use to tolerance; self assisted stretching okay." *Id.* Under the subjective history section, she reported plaintiff saw physical therapy once or twice but "really couldn't make progress." *Id.*

On March 26, 2018, Dr. Andrews saw plaintiff to discuss his visit with PA-C Harvey. *Id.*, Ex. D. Plaintiff reported that PA-C Harvey said physical therapy will no longer help his shoulder injury. *Id.* Dr. Andrews noted that PA-C Harvey's "first visit for this condition in early December seemed pessimistic regarding PT or conservative management in general helping him avoid surgery. The surgery contemplated was a complete arthroplasty. She also wanted to avoid surgery until he was out of jail so he could undergo aggressive rehab, and because surgery at too young an age may require a re-do. She also expressed pessimism

regarding repair of his rotator cuff tear, no matter when undertaken." *Id.* He created a plan to "consider the value of ongoing frequent PT, given the issues presented by his PA-C" and to have surgery addressed with his PA-C after plaintiff's release from incarceration. *Id.*

On March 30, 2018, Nurse Bellinger noted plaintiff had an upset stomach and did not want to go to his physical therapy appointment that day. *Id.*, Ex. C. She cancelled the appointment and noted his next scheduled appointment was April 6, 2018. *Id.*

On April 23, 2018, Dr. Andrews saw plaintiff. *Id.*, Ex. D. He noted plaintiff's orthopedist recommended a complete shoulder replacement after he is released from jail. *Id.* Dr. Andrews also noted plaintiff still complained of shoulder pain despite use of Tramadol so he discontinued that prescription and ordered Morphine-Contin. *Id.*

B.    Procedural History

Plaintiff initiated this action on March 21, 2018. Dkt. 1. The County moved to dismiss plaintiff's complaint on May 17, 2018. Dkt. 14. The motion was granted and the County was dismissed from the matter on August 20, 2018. Dkt. 25. The remaining defendants filed their motion for summary judgment on August 9, 2018. Dkt. 21.

In his complaint, plaintiff alleges the defendants were deliberately indifferent to his serious medical needs by failing to procure medically necessary physical therapy for his shoulder, knowing the medical care was needed and being aware of the risks and future harm it would cause if he did not receive the care. Dkt. 6. Plaintiff also alleges defendants were deliberately indifferent to his serious medical needs by denying, delaying, and/or intentionally interfering with his medically necessary treatment that was prescribed, without any justifiable medical reason. *Id.* Plaintiff further alleges Nurse Bellinger was deliberately indifferent to his serious medical needs by deliberately ignoring and/or refusing to ensure his receipt of

REPORT AND RECOMMENDATION
PAGE - 7

medically necessary physical therapy, intentionally refusing to approve physical therapy, ignoring his referral for physical therapy, and/or ignoring the recommendation for physical therapy despite serious risks to his health. *Id.* He argues that as a result of not receiving physical therapy promptly, his only options regarding his shoulder are to be disabled for the rest of his life or get a shoulder replacement. *Id.*

### III. DISCUSSION

A. Summary Judgment and § 1983 Standards

Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). That genuine issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

When applying these standards, the Court must view the evidence and draw reasonable inferences in the light most favorable to the non-moving party. *See United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006). The moving party can carry its initial burden by producing evidence that negates an essential element of the nonmoving party's claim, or by establishing that the nonmoving party does not have enough evidence of an essential element to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once this has occurred, the procedural burden shifts to the party opposing summary judgment, who must go beyond the pleadings and affirmatively establish a genuine issue on the

REPORT AND RECOMMENDATION
PAGE - 8

merits of the case.  Fed. R. Civ. P. 56(e).  The nonmovant must do more than simply deny the veracity of everything offered by the moving party or show a mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To avoid summary judgment, the nonmoving party must, in the words of Rule 56, "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The nonmoving party's failure of proof concerning an essential element of its case necessarily "renders all other facts immaterial," creating no genuine issue of fact and thereby entitling the moving party to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must set forth the specific factual bases upon which he claims each defendant is liable.  *Aldabe v. Aldabe*, 606 F.2d 1089, 1092 (9th Cir. 1980).  Specifically, a plaintiff must show (1) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state or federal law.  *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the constitutional or statutory violations alleged in the complaint.  *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

B.  Legal Standard for Deliberate Indifference to Serious Medical Needs

Plaintiff alleges that the defendants violated his constitutional rights as a result of the medical care he received while incarcerated at the Snohomish County Jail.  Specifically, plaintiff alleges that the defendants were deliberately indifferent to his serious medical needs by failing to provide him with physical therapy treatment to address his right shoulder injury,

REPORT AND RECOMMENDATION
PAGE - 9

1   ignored his complaints of pain, and/or denied or interfered with his prescribed medical

2   treatment, in violation of his constitutional rights.

3        In order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part

4   test containing both an objective and a subjective component. The Eighth Amendment standard

5   requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish a

6   constitutional violation; and (2) the prison official acted with a sufficiently culpable state of

7   mind. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).  The objective component of an Eighth

8   Amendment claim is "contextual and responsive to 'contemporary standards of decency.' "

9   *Hudson v. McMillian,* 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103

10  (1976)).

11       The state of mind requirement under the subjective component of the Eighth

12  Amendment standard has been defined as "deliberate indifference" to an inmate's health or

13  safety.  *Farmer,* 511 U.S. at 834.  Under the "deliberate indifference" standard, a prison

14  official cannot be found liable for denying an inmate humane conditions of confinement unless

15  the official knows of and disregards an excessive risk to inmate health or safety.  *Farmer,* 511

16  U.S. at 837.

17       The Ninth Circuit has explained that "[p]rison officials are deliberately indifferent to a

18  prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical

19  treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation marks

20  omitted). "[A] serious medical need is present whenever the failure to treat a prisoner's

21  condition could result in further significant injury or the unnecessary and wanton infliction of

22  pain." *Clement v. Gomez,* 298 F.3d 898, 904 (9th Cir. 2002).

REPORT AND RECOMMENDATION
PAGE - 10

1

C.   Stuart Andrews, M.D.

2

Plaintiff has failed to establish a genuine issue of material fact regarding the

3

constitutionality of Dr. Andrews' conduct.  Plaintiff failed to oppose defendants' summary

4

judgment motion.  As a result, plaintiff has not provided any evidence that Dr. Andrews'

5

medical treatment put plaintiff at substantial risk of suffering serious harm, and Dr. Andrews

6

did not take reasonable measures to abate that risk when a reasonable physician in his position

7

would have done so.  *See Gordon*, 888 F. 3d at 1125.

8

Dr. Andrews regularly saw plaintiff in response to plaintiff's complaints of pain

9

associated with his shoulder injury.  He reviewed medical records from plaintiff's outside

10

orthopedic providers and physical therapist, and remained apprised of their recommendations.

11

He acknowledged plaintiff's complaints regarding his pain medication and lack of weekly

12

physical therapy.  Although plaintiff requested more frequent physical therapy appointments,

13

Dr. Andrews continuously advised him he needed to increase the range of motion in his

14

shoulder with home exercises before he could go to physical therapy for deltoid strengthening,

15

which was in line with PA-C Harvey's recommendation.  Dr. Andrews sent plaintiff to

16

physical therapy for advice on what exercises he could do while incarcerated to increase his

17

range of motion.  Dr. Andrews himself provided exercises that plaintiff could perform based on

18

plaintiff's UWMC records and physical therapy records.  He further authorized a second

19

mattress for plaintiff to elevate himself in his sleep, and changed his medications when

20

plaintiff continued to complain of shoulder pain.

21

Without more, plaintiff's disagreement with his doctor's methodology or course of

22

treatment is not enough to state a claim of deliberate indifference.  *Jackson v. McIntosh*, 90

23

F.3d 330, 332 (9th Cir. 1996); *Shields v. Kunkel*, 442 F.2d 409, 410 (9th Cir. 1971).  As

24

25

26

REPORT AND RECOMMENDATION
PAGE - 11

plaintiff has declined to present any evidence or argument to the contrary, the evidence presented by the defendants remains undisputed. Accordingly, plaintiff has failed to raise a genuine issue of material fact that defendant Dr. Andrews was deliberately indifferent to plaintiff's serious medical needs, and Dr. Andrews is entitled to summary judgment.

D. Nurse Deborah Bellinger

The allegations against Nurse Bellinger in plaintiff's complaint are limited. He alleges she "didn't see" his physical therapy referral in his medical chart and was under the impression he was to do his own physical therapy in his cell. Dkt. 6 at 5. He also states that she did schedule him for a physical therapy appointment after further inspecting his records. *Id.* He alleges that he told her that the Naproxen medication was giving him a stomach ache. *Id.* at 6. Plaintiff argues these actions equate to Nurse Bellinger being deliberately indifferent to his serious medical needs, especially with regard to his access to physical therapy.

Because plaintiff failed to oppose defendants' summary judgment motion, he has failed to show any genuine issue of material fact with regard to Nurse Bellinger. Based on the evidence presented by defendants, Nurse Bellinger responded to plaintiff's medical kite requesting weekly physical therapy and advised him of Dr. Andrews' treatment plan to do daily home exercises instead. It also appears Nurse Bellinger did schedule plaintiff for physical therapy after plaintiff's physical therapist called requesting to see plaintiff 1-2 times per week for four weeks. Thus, Nurse Bellinger appears to have been reasonably attentive to plaintiff's medical needs and followed the treatment plan provided by plaintiff's medical providers. Plaintiff has failed to establish any of Nurse Bellinger's actions caused plaintiff to suffer increased harm or that she participated in any activities which did so. Accordingly, Nurse Bellinger is entitled to summary judgment.

REPORT AND RECOMMENDATION
PAGE - 12

E.  ARNP Alta Langdon

Although plaintiff named ARNP Langdon as a defendant in this action, he failed to describe any specific acts of ARNP Langdon that harmed his federal constitutional rights. Because the body of his complaint fails to even mention ARNP Langdon, and he failed to oppose defendants' motion for summary judgment, he has failed to show ARNP Langdon was deliberately indifferent to his serious medical needs, and ARNP Langdon is entitled to summary judgment.

F.  Plaintiff Failed to Notify the Court of his Change of Address

An alternative basis for dismissal of this action is plaintiff's failure to inform the Court of his current address. LCR 10(f) requires unrepresented parties to notify the court of any change of address or telephone number within ten days of the change. LCR 41 further provides that

> [a] party proceeding pro se shall keep the court and opposing parties advised as to his current mailing address and, if electronically filing or receiving notices electronically, his or her current email address. If mail directed to a pro se plaintiff by the clerk is returned by the Postal Service, or if email is returned by the internet service provider, and if such plaintiff fails to notify the court and opposing parties within 60 days thereafter of his or her current mailing or email address, the court may dismiss the action without prejudice for failure to prosecute.

LCR 41(b)(2).

On September 24, 2018, mail addressed to Snohomish County Sheriff's Office was returned as plaintiff was released from custody on September 1, 2018. Dkt. 33. Mail addressed to Shawn Godwin was also returned as undeliverable on October 1, 2018 because plaintiff was not in custody. Dkt. 34. Because over sixty days have elapsed since mail directed to plaintiff at his address of record was returned to the Court as undeliverable, this action should be dismissed without prejudice for failure to prosecute pursuant to LCR 41(b)(2).

REPORT AND RECOMMENDATION
PAGE - 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## V.    CONCLUSION

For the foregoing reasons, this Court recommends that the defendants' unopposed motion for summary judgment, Dkt. 21, be GRANTED, and this action be DISMISSED with prejudice.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **February 18, 2019**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 22, 2019.**

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 28th day of January, 2019.

_James P. Donohue_
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 14